FILED & ENTERED

JUN 03 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST      DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 9:13-bk-12388-PC |
| NEWTON ENTERPRISES, | Chapter 7 |
| Debtor. | Adversary No. 9:14-ap-01127-PC |
| JEREMY W. FAITH, CHAPTER 7 TRUSTEE, Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| INLINE DISTRIBUTING CO., Defendant. | Date: May 11, 2015<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom # 201<br>1415 State Street<br>Santa Barbara, CA 93101 |

Jeremy Faith, Chapter 7 Trustee ("Faith") seeks a judgment against Inline Distributing Co. ("Inline") avoiding a pre-petition transfer by Newton Enterprises ("Debtor") to Inline in the amount of $10,179.30 as preferential under 11 U.S.C. § 547.[1]  Trial of this adversary proceeding

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable

1

was commenced and concluded on May 11, 2015.  Having considered the parties' joint pretrial order, the evidentiary record and arguments of counsel, the court will enter a judgment in favor of Inline based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052.

## I. STATEMENT OF FACTS

Debtor was a wholesale building material supplier that did business as Newton Building Materials and Newton Supplies.  Debtor filed a voluntary petition under chapter 7 on September 23, 2013.  Faith is the duly appointed trustee in the case.

On June 30, 2013, the Debtor ceased doing business and began collecting accounts receivable and liquidating assets to pay creditors.  On August 2, 2013, within the 90-day period preceding the petition date, Debtor issued Check # 31328 payable to the order of Inline in the amount of $10,179.30 dated August 2, 2013 (the "Transfer"), in payment of the following Inline invoices:

| Invoice No. | Invoice Date | P.O Date | Amount | Pmt. Rec'd | Days to Pay |
| --- | --- | --- | --- | --- | --- |
| 597895-00 | 4/5/13 | 4/4/13 | 1565.00 | 8/7/13 | 124 |
| 597789-00 | 4/5/13 | 4/3/13 | 722.00 | 8/7/13 | 124 |
| 597788-00 | 4/5/13 | 4/3/13 | 2120.50[2] | 8/7/13 | 124 |
| 598248-00 | 4/9/13 | 4/8/13 | 735.80 | 8/7/13 | 120 |
| 598962-00 | 4/16/13 | 4/15/13 | 60.00 | 8/7/13 | 113 |
| 598852-00 | 4/16/13 | 4/15/13 | 4976.00 | 8/7/13 | 113 |

The check was drawn on the Debtor's checking account at City National Bank.  Debtor's Transfer to Inline was made over a month after the Debtor had closed its doors.

---

certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2] Faith's Exhibit # 3 did not include a copy of Invoice # 597788-00.  However, the court assumes that the amount of the invoice was $2,120.50 because the parties stipulated that the Transfer was in payment of the five invoices.

On August 8, 2014, Faith timely filed a complaint seeking to avoid the Transfer to Inline as a preferential transfer pursuant to 11 U.S.C. § 547. Inline filed an answer to the complaint on September 16, 2014. In the joint pretrial order, Faith and Inline stipulated that:

1. Faith has established all elements of his prima facie case pursuant to 11 U.S.C. § 547(b) for recover of the Transfer, and the burden now shifts to Inline to establish its ordinary course of business defense.

2. Debtor ceased doing business on June 30, 2013, and began liquidating its assets to pay creditors.

3. The disputed payment from Debtor to Inline was made within a 90-125 day range after invoice.

4. Before the preference period, Inline was consistently compensated 90-125 days after invoice.

5. Other customers of Inline also consistently compensated Inline 90-125 days after invoice.

After a trial on May 11, 2015, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a). To the extent that the claim made the basis of Faith's complaint may constitute a "Stern claim," the parties at trial nevertheless expressly consented to the entry of a final judgment by the bankruptcy court.[3]

---

[3] "Article III permits bankruptcy courts to decide Stern claims submitted to them by consent. Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. ___, 2015 WL 2456619, *13 (May 26, 2015). "Stern claims," so named after the Supreme Court's decision in Stern v. Marshall, ___ U.S., ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), "are claims 'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.'" Mastro v. Rigby, 764 F.3d 1090, 1093 (9th Cir. 2014) (citation omitted).

3

A. Standard Applicable to the Preferential Transfer Defense Under 11 U.S.C. § 547(c).

Section 547(c) of the Code states that a trustee may not avoid a preferential transfer "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was --

    (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
    (B) made according to ordinary business terms."

11 U.S.C. § 547(c)(2) (emphasis added). "Section 547(c)(2) is meant to protect 'recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." Pereira v. United Parcel Serv. of Am, Inc. (In re Waterford Wedgwood USA, Inc.), 508 B.R. 821, 827 (Bankr. S.D.N.Y. 2014). "The purpose of the exception is to 'leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." Id. (citation omitted); see Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.), 315 F.3d 1192, 1196 (9th Cir. 2003) ("A debtor may not 'prefer' one creditor over another by selecting to pay one but not the other during the debtor's slide into bankruptcy."). "A creditor bears the burden of proving the defenses by a preponderance of the evidence." Waterford Wedgwood USA, 508 B.R. at 827.

Section 547(c)(2)(A) is the subjective element that requires the creditor to establish "a baseline of past practices between itself and the debtor," and that the transfer was "ordinary in relation to [these] past practices." Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 790 (9th Cir. 2007). "Among the factors courts consider in determining whether transfers are ordinary in relation to past practices are: (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition." Sulmeyer v. Pacific Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir. 1994). These traditional factors are non-exclusive and other factors bearing on past

4

practices may be relevant.  See Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.), 482 F.3d 1118, 1129 (9th Cir. 2007).

Payments made later than required by contract generally are not made in the ordinary course of business.  See Mordy v. Chemcarb, Inc. (In re Food Catering & Housing, Inc.), 971 F.2d 396, 398 (9th Cir. 1992) ("Delay is particularly relevant in taking a payment outside the ordinary course of business exception").  But a late payment in conformity with the prior course of dealing may be in the ordinary course.  See Grand Chevrolet, 25 F.3d at 732 ("Other circuits have held that late payments can fall within the ordinary course of business exception if the prior course of conduct between the parties demonstrates that those types of payments were ordinarily made late.  We now join those circuits." (citations omitted)).

According to Inline's Exhibit C, Debtor and Inline had been doing business since at least April 2, 2012.  Faith and Inline stipulated that "[b]efore the preference period, Inline was consistently compensated 90-125 days after invoice."  Through the testimony of Inline's Credit Manager, Brad Ratliff, Inline introduced largely uncontroverted evidence that:  (1) Debtor always paid invoices from Inline by check; (2) Debtor typically paid Inline's invoices between 113 and 124 days from the date of invoice; (3) Debtor historically paid several invoices from Inline by one check; (4) the payment of five invoices by Debtor to Inline with one check within 113 to 124 days from date of invoice was not unusual; (5) Inline did not put pressure on the Debtor to pay the invoices at issue nor engage in any unusual activity to collect the amounts owed by Debtor to Inline under the invoices; (6) Inline did not restrict the amount of credit available to Debtor at any time between July 26, 2012 and August 7, 2013; (7) Inline was not aware of the Debtor's deteriorating financial condition; (8) Inline did not vary its credit terms with the Debtor at any time between July 26, 2012 and August 7, 2013; (9) Inline did not threaten to cut off the Debtor or refuse to supply the Debtor because of the time it was taking for the Debtor to pay invoices due to Inline; (10)  Inline received payments from the Debtor rather consistently once or twice a month, maybe every other month, depending on the volume of purchases; (11) it was ordinary and typical in the industry, and not unusual, for wholesale building material suppliers of the Debtor's size to pay invoices 113 to 124 days from date of

invoice; and (12) Inline was not surprised when it received the payment from Debtor for the five invoices at issue in August 2013. Debtor's former bookkeeper, Mary Ellen Ledbetter, testified on rebuttal that "Pat," referring to Debtor's president J. Patrick Newton, made the decision which vendors to pay after the Debtor ceased operations. However, Ms. Ledbetter was unable to testify as to the Debtor's ordinary business practices before and after the Debtor closed its doors nor whether there was any resulting change in such business practices with respect to the payment of invoices.

The weight of the evidence supports a finding that there was nothing unusual about Inline receiving payment from Debtor within 90 to 125 days after date of invoice, and there was no evidence that Inline either took advantage of the Debtor's deteriorating financial condition or increased its efforts to collect invoices due from the Debtor. The five invoices at issue were paid by check between 113 and 124 days after date of invoice. The Transfer was ordinary in relation to past practices between Debtor and Inline.

Section 547(c)(2)(B) is the objective element that requires the creditor to show that the transfer comports with "terms employed by similarly situated debtors and creditors facing the same or similar problems." In re Kaypro, 218 F.3d 1070, 1074 (9th Cir. 2000). "If the terms in question are ordinary for industry participants under financial distress, then that is ordinary for the industry." Id. To establish that a preferential transfer was made according to ordinary business terms, the creditor must introduce competent evidence of the practice in the industry. See In re Roblin Indus., Inc., 78 F.3d 30, 42-43 (2d Cir. 1996).

"'[O]rdinary business terms' refers to the broad range of terms that encompasses the practices employed by [similarly situated] debtors and creditors, including terms that are ordinary for those under financial distress. Only a transaction that is so unusual or uncommon 'as to render it an aberration in the relevant industry' falls outside the broad range of terms encompassed by the meaning 'ordinary business terms.'" Jan Weilert RV, 315 F.3d at 1198.

According to the evidence, Debtor paid the five invoices at issue by check on August 2, 2013 – between 113 and 124 days from date of invoice. Debtor always paid invoices from Inline by check within 90-125 days from the date of invoice, and Debtor's payment of the five invoices

at issue was no different. The parties stipulated that "[o]ther customers of Inline also consistently compensated Inline 90-125 days after invoice." The evidence established that payment over 100 days from date of invoice was typical and not unusual in the industry. Accordingly, the court finds that the business terms of the transaction were within the broad range of terms ordinarily used within the construction industry.

Faith contends that the Transfer could not have been in the ordinary course of the Debtor's business because Debtor had ceased doing business over a month before the Transfer. Faith argues "[t]he fact that Debtor closed its doors and shut down the business prior to making the Transfer payment to [Inline] renders the payment outside the ordinary course of business[,]"[4] citing In re Peninsula Roofing & Sheet Metal, Inc., 9 B.R. 257, 261 (Bankr. N.D. Mich. 1981) and Marathon Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1567 (11th Cir. 1986). Inline's trial brief does not address this issue.

One might assume that the lack of an ongoing business at the time of a challenged transfer would negate a defense under § 547(c)(2), but even the Eleventh Circuit in Craig Oil Co. cited by Faith concluded that it does not. In Craig Oil Co., the court observed that:

> Some courts have been more likely to find payments outside the ordinary course if they are made after a business has ceased operations. See In re Penninsula Roofing & Sheet Metal, Inc., 9 B.R. 257, 261 (Bankr. N.D. Mich.1981) (not in ordinary course since "business was closed, insolvent and attempting to dissolve"); Cf. Kallen v. Litas, 47 B.R. 977 (Bankr. N.D. Ill. 1985) (not in ordinary course because services rendered after business destroyed by fire). But see In re Ferguson, 41 B.R. 118 (Bankr. E.D. Va. 1984) (payment in ordinary course even though farmer was closing his business). While we concur that dissolution of the business may be relevant in determining what constitutes the ordinary course of business, we do not conclude that factor alone controls this case.

785 F.2d at 1567. Cessation of business operations is not dispositive, but merely one factor to be considered in defining whether payment was made in the ordinary course of business. See, e.g., Buchwald v. Avista Energy, Inc. (In re N. Am. Energy Conservation, Inc.), 339 B.R. 75, 81 (Bankr. S.D.N.Y. 2006) ("[T]his court is in agreement with those jurisdictions which have found

---

[4] Plaintiff and Trustee Jeremy W. Faith's Trial Brief, 6:15-17.

that despite the cessation of the debtor's business, the ordinary course of business exception is available to the transferee."); <u>Continental Energy Assocs. Ltd. P'ship v. Olhanoski (Continental Energy Assocs. Ltd. P'ship)</u>, 228 B.R. 96, 99 (Bankr. M.D. Pa. 1998) ("In determining whether payment by cashier's check lies outside the ordinary course of business courts have considered whether: (1) the debtor had not previously paid by cashier's check; (2) a significant number of payments were overdue; (3) <u>payments were made after the Debtor stopped doing business with the creditor and after the Debtor ceased operations</u>; (4) the payment was induced by the creditor's request for assurance of payments; and (5) another creditor was attempting to push the debtor into bankruptcy." (quoting <u>Matter of Sims Office Supply, Inc.</u>, 94 B.R. 744, 749 (Bankr. M.D. Fla. 1988) (emphasis added)).

## CONCLUSION

In sum, the Transfer by Debtor to Inline was in payment of a debt incurred by the Debtor in the ordinary course of business of the Debtor and Inline, and the Transfer itself was made in the ordinary course of business of the Debtor and Inline and made according to ordinary business terms. Accordingly, the court will enter a judgment in favor of Inline on the claim made the basis of Faith's complaint.

A separate judgment will be entered consistent with this memorandum.

###

Date: June 3, 2015

Peter H. Carroll
United States Bankruptcy Judge